UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

PHILIP D. DENNISON,                              )
                                                 )
                        Plaintiff,               )
                                                 )
v.                                               )    No. 2:26-cv-00255-JRO-MKK
                                                 )
JUNE CAUDILL Title Iv-D Prosecutor,              )
INDIANA DEPARTMENT OF CHILD                      )
SERVICES,                                        )
INDIANA BUREAU OF MOTOR                          )
VEHICLES,                                        )
                                                 )
                        Defendants.              )

### ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, DISMISSING COMPLAINT, AND ORDER TO SHOW CAUSE

This matter is before the Court on *pro se* Plaintiff Philip Dennison's Motion for Leave to Proceed *In Forma Pauperis*. Dkt. 2. Plaintiff initiated this action against the Indiana Bureau of Motor Vehicles, the Indiana Department of Child Services, and June Caudill, a Title IV-D Prosecutor, alleging violations of his right to due process. Dkt. 1. Because the Court **GRANTS** the motion to proceed *in forma pauperis*, this action is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons below, the Court **DISMISSES** Dennison's complaint without prejudice and **ORDERS** him to show cause **by May 25, 2026,** why final judgment should not issue against him.

### I.  IN FORMA PAUPERIS STATUS

The Court may authorize a plaintiff to file a lawsuit "without prepayment of fees" if the plaintiff "submits an affidavit" demonstrating that he lacks the

assets to pay the filing fee at this time.  28 U.S.C. § 1915(a)(1).  Dennison's motion, dkt. 2, meets this standard and is **GRANTED** accordingly.

While *in forma pauperis* status allows a plaintiff to proceed without pre-paying the filing fee, the plaintiff remains liable for the full fees.  "[A]ll § 1915(a) does for any litigant is excuse the *pre*-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able." *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997)).  The filing fee for *in forma pauperis* litigants is $350.00.  No payment is due at this time, but the $350.00 balance remains due and owing.

## II.  SCREENING STANDARD

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient.  28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief.  *Id.*  Dismissal under § 1915 is an exercise of this Court's discretion.  *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).  To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Because a defendant must have "fair notice of what . . . the claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that he has been illegally harmed.  *Twombly*, 550 U.S. at 555.  Rather, he must set forth a "short and plain statement" of facts in his complaint such that the Court can infer the ways in which the named defendant could be held liable for the harm alleged.  Fed. R. Civ. P. 8(a)(2).

*Pro se* complaints, such as that filed by Dennison, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Arnett*, 658 F.3d at 751.  Nevertheless, any plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

## III.  THE COMPLAINT

Dennison was incarcerated for several weeks in the fall of 2025.  Dkt. 1 at 2.  During this period, the Indiana Bureau of Motor Vehicles ("BMV") issued a Notice of Suspension of Dennison's driver's license based on information from the Title IV-D agency (the state agency that regulates child support enforcement; in Indiana, the Department of Child Services ("DCS")).[1]  *Id.*  DCS reported that Dennison failed to report for a hearing as required under Indiana Code § 31-25-4-33.  *Id.*  The BMV's notice of suspension took effect November 8, 2025, three

---

[1] See *About Us*, IND. DEP'T CHILD SERV., https://www.in.gov/dcs/child-support/about-us (last visited April 20, 2026).

3

days after Dennison's incarceration ended. *Id.* Dennison did not learn of the suspension until December 20, 2025, when he was cited for Driving While Suspended. *Id.* Indiana reinstated Dennison's license on January 2, 2026, when he paid his support. *Id.*

On January 14, 2026, DCS issued income-withholding orders to an employer where Dennison never worked. *Id.* at 3. DCS did not direct withholding from Dennison's Social Security disability payments. This caused Dennison to be "wrongly designated . . . as delinquent, triggering the invalid suspension." *Id.* DCS ignored Dennison's attempts to rectify this error. *Id.* at 3.

Then, in February 2026, Dennison was cited for the infraction of Driving While Suspended. Dkt. 1-1 at 1. The State appeared by June Caudill, a Title IV-D prosecutor, at the February 26 hearing. *Id.* at 2; Dkt. 1 at 4. Caudill prosecuted the matter through a bench trial on April 9, 2026, where the Owen County Circuit Court found Dennison guilty of the infraction. Dkt. 1 at 2. Dennison alleges that Caudill's appearance exceeded her authority as a Title IV-D prosecutor and was conducted without a formal delegation from the elected county prosecutor. Dkt. 1 at 4.

Dennison now brings what he styles as three claims: (1) denial of procedural due process for suspending his driver's license without a hearing, under 42 U.S.C. § 1983; (2) unauthorized prosecution and void judgment, under 42 U.S.C. § 1983; and (3) declaratory and injunctive relief. *Id.* at 4–5. Dennison's prayer for relief asks the Court to:

     1. Declare the BMV suspension and April 9, 2026 conviction void for violations of due process;

     2. Enter judgment vacating the conviction in Cause No. 60C0I-2602-IF-000053[;]

     3. Award compensatory and punitive damages against Defendant Caudill for unconstitutional acts under color of law;

     4. Grant injunctive relief prohibiting enforcement of void suspensions and unauthorized prosecutions;

     5. Award reasonable costs [under] 42 U.S.C. § 1988;

     6. Provide all other just and proper relief.

*Id.* at 5.

## IV. DISCUSSION

The Court can only adjudicate disputes over which it has jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see Buethe v. Britt Airlines*, 749 F.2d 1235, 1238 (7th Cir. 1984) (a court "must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking"). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514; *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Several jurisdictional doctrines are at play in Dennison's present complaint: the *Rooker-Feldman* doctrine, sovereign and prosecutorial immunity, standing, and mootness.   Dennison must establish that this Court has jurisdiction in the face of each doctrine to proceed.

## A.   The *Rooker–Feldman* Doctrine

The *Rooker–Feldman* doctrine prevents federal district courts from reviewing state court judgments.  *See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  This doctrine "bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment."  *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000).  It also "precludes federal jurisdiction over claims 'inextricably intertwined' with a state court determination."  *Id.*  This is because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."  *Id.*

Dennison's Count II and his specific request that this Court "[e]nter a judgment vacating the conviction in Cause No. 60C01-2602-IF-000053" ask the Court to review a state court judgment.  His request for an injunction prohibiting enforcement of the conviction also functions as federal court review of the state court judgment.  Such a review is beyond the power of this Court according to the *Rooker–Feldman* doctrine.  Dennison's Count II—to the extent it invokes the Court's jurisdiction to void or vacate a state court judgment—is accordingly

6

**DISMISSED.** To pursue a remedy for any unlawful state court judgment, Dennison must appeal in state court through the Indiana Court of Appeals and the Indiana Supreme Court. Only then may he present his federal-law arguments to the Supreme Court of the United States.

## B.    Immunity Bars

State agencies such as DCS and the BMV are not "persons" subject to suit under 42 U.S.C. § 1983, and these entities may not be sued in federal court under the Eleventh Amendment. *Johnson v. Sup. Ct. of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). This Court thus lacks jurisdiction to hear Dennison's claims against the state-agency parties. Dennison's claims against DCS and the BMV are accordingly **DISMISSED.**

Along the same lines, Dennison's claim seeking compensatory and punitive damages ("money damages") from Prosecutor June Caudill runs into an immediate obstacle: prosecutorial immunity. "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016). As Dennison pleads, all of Prosecutor Caudill's wrongful conduct occurred in the course of prosecuting him in court. This is exactly the kind of judicial-phase conduct for which Caudill has prosecutorial immunity. To the extent Dennison brings a § 1983 claim against Caudill for money damages, that claim must be **DISMISSED.**

## C.    Standing for Injunctive Relief

Dennison asks this Court to enjoin all defendants from "future repetition of such unlawful procedures." Dkt. 1 at 5. He does not have standing to bring this claim.

Article III restrains the judicial power of federal courts to resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 425. To demonstrate standing for injunctive relief, "a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Put another way, Dennison must plead "a sufficient likelihood that he will again be wronged in a similar way . . . ." *Lyons*, 461 U.S. 95, 111 (1983). Nothing in Dennison's complaint suggests he faces a "real and immediate threat" of future unlawful procedures. Dennison's claims for injunctive relief are therefore **DISMISSED.**

## D.    Mootness of 2025 Driver's License Suspension Claim

Dennison asks the Court to "[d]eclare the BMV suspension and April 9, 2026 conviction void" and seeks "injunctive relief prohibiting enforcement of void

suspensions." Dkt. 1 at 5.  As explained above, there is no standing for injunctive relief because there's no allegation of future threat.  Regardless, these issues are also moot.  Where standing asks if a claim is brought too early—before injury is imminent—mootness asks if a case is brought too late and there is nothing a court can do to address a plaintiff's alleged injuries.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

The BMV suspended Dennison's driver's license on November 8, 2025, and reinstated it on January 2, 2026.  Dkt. 1 at 2.  Because the matter of Dennison's suspended driver's license was resolved in January, the suspension is no longer a "live" controversy.  *Already, LLC*, 568 U.S. at 91.  Dennison's claim for declaratory and injunctive relief asking the Court to void and not enforce the BMV's suspension is therefore **DISMISSED** as moot.

**E.    Rule 11 Warning**

As discussed further in the conclusion below, Dennison will have an opportunity to amend his complaint.  If he chooses to do so, the Court emphasizes Dennison's obligation under Federal Rule of Civil Procedure 11(b) to certify that the amended complaint's legal contentions are warranted by existing law.  In Dennison's current complaint, he cites *Coleman v. Hudson*, 682 F3d 775 (7th Cir. 2012), for the proposition that "[p]rocedural due-process violations [are]

9

actionable under § 1983 when deprivation occurs absent notice or hearing." Dkt. 1 at 3. The Court can find no such case.

Dennison further states that Indiana Code §§ 31-25-4-2 and 31-25-4-15 limit the authority of a Title IV-D prosecutor to only civil child-support enforcement. The Court has reviewed those statutes. Section 31-25-4-2 defines the word "delinquent," while Section 31-25-4-15 authorizes a court of jurisdiction over Title IV-D child support matters to appoint certain assistants. Neither statute limits the authority of a Title IV-D prosecutor to civil enforcement measures.

The Court is not convinced the specific legal contentions contained in the complaint comply with Rule 11(b)'s requirement. Under Rule 11(c), the Court could order Dennison to show cause as to why his citations to the above material do not violate Rule 11(b). A party found to have violated Rule 11(b) can be sanctioned. Fed. R. Civ. P. 11(c)(1). Such a sanction may include an order to pay a penalty into the court, Fed. R. Civ. P. 11(c)(3), or even involuntary dismissal of this action with prejudice, Fed. R. Civ. P. 41(b). Because the Court dismisses Dennison's complaint in its entirety, it will not order him to show cause at this time. However, Dennison is accordingly warned of the possibility of sanctions if any future filings violate Rule 11(b).

The Court notes that when Dennison filed his complaint, he did not know which judge would preside over the matter. However, this Court entered a supplemental notice to *pro se* litigants regarding the use of artificial intelligence on April 13, 2026. Dkt. 8. This notice and the Practices and Procedures of this

10

Court require all litigants to tell the Court if they used artificial intelligence ("AI") to help write their complaint, a motion, or any other documents they file into the case. If Dennison uses AI to write a document, he must include a signed statement at the end of the document that says:

> This document was generated with the assistance of [identify AI tool name]. I hereby certify under penalty of perjury that, despite reliance on an AI tool, I have independently reviewed this document to confirm the accuracy and legitimacy of all cited authority and any characterization or summary thereof pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Dkt. 8 at 1–2. Filing a document that does not follow this AI policy, including a document citing fake cases or mischaracterizing statutes, may result in appropriate sanctions up to and including dismissal of the case or a default judgment against the offending party.

### V. CONCLUSION

For these reasons, Dennison's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED.** Dkt. [2]. His complaint, dkt. [1], however, must be **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

The dismissal of the complaint will not lead to the dismissal of the action at present. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). In the interest of justice, the Court will allow the plaintiff to amend his complaint if, after reviewing this Court's order, he believes that he can state a viable claim for relief, consistent with the allegations he has already made. *See Tate v. SCR Med.*

11

*Transp.,* 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a *pro se* litigant, an opportunity to amend his complaint."); *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014 (7th Cir. 2013).

The plaintiff shall have **through May 25, 2026, to file an amended complaint.**

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendants with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury.  In organizing his complaint, the plaintiff may benefit from using the Court's complaint form. The **clerk is directed** to include a copy of the *pro se* non-prisoner complaint form along with the plaintiff's copy of this Order, which he must use if he files an amended complaint.  *See* Local Rule 8-1 (requiring *pro se* plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

Any amended complaint should have the proper case number, No. 2:26-cv-00255-JRO-MKK, and the words "Amended Complaint" on the first page.  The amended complaint will completely replace the original.  *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture.").  Therefore, it must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

12

If the plaintiff files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b).  If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

**SO ORDERED.**

Date: 4/23/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

PHILIP D. DENNISON
2709 Patricksburg Road
Spencer, IN 47460

13